IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SANDRA ZELASKO, )
)
        Plaintiff, )
)
vs. )   Case No. 08-cv-0366-MJR
)
RODOLFO COMERIO and )
HARBURG-FREUDENBERGER )
MASCHINENBAU GMBH, )
)
        Defendants. )
_____

RODOLFO COMERIO, )
)
        Third-Party Plaintiff, )
)
vs. )
)
CONTINENTAL TIRE NORTH )
AMERICA, INC., )
)
        Third-Party Defendant. )
_____

HARBURG FREUDENBERGER )
MASCHINENBAU GMBH, )
)
        Third-Party Plaintiff, )
)
vs. )
)
CONTINENTAL TIRE NORTH )
AMERICA, INC., )
)
        Third-Party Defendant. )
_____

REAGAN, District Judge:

A.  Introduction and Procedural Background

➔   Zᴇʟᴀsᴋᴏ's Cᴏᴍᴘʟᴀɪɴᴛ (ᴀɢᴀɪɴsᴛ Rᴏᴅᴏʟғᴏ ᴀɴᴅ Kʀᴜᴘᴘ/HF)

In April 2006, Sandra Zelasko was injured while working at her job in a tire production plant in Mt. Vernon, Illinois. Zelasko's employer was Continental Tire North America, Inc. ("Continental"). In May 2008, Zelasko filed suit in the Circuit Court of Jefferson County, Illinois against two Defendants: (1) Rodolfo Comerio Snc di Enrico e Carlo Comerio ("Rodolfo") and (2) Krupp Elastomertechnik ("Krupp"). Zelasko's complaint alleges as follows.

Rodolfo (an Italian company that designs and manufactures equipment used in the rubber industry) sold a rubber "cushion calendar" machine to Continental Tire for use at the Mt. Vernon plant. Krupp manufactured and sold to Continental an emergency safety rope that was installed on the Rodolfo cushion calendar system sold to Continental for use at the Mt. Vernon facility.

While "tailing out the cushion calendar" on April 22, 2006 and cutting excess rubber off an anvil, Zelasko's left glove got caught. Her arm was pulled over the top of the anvil roller. Zelasko grabbed the right emergency safety rope manufactured by Krupp, but the cushion calendar system continued to pull her into the machine. Coworkers heard Zelasko's screams and used the conveyor line emergency stop to halt the machine. Zelasko suffered internal and external injuries and was disfigured and disabled.

Zelasko's state court complaint contains products liability, negligence and breach of warranty claims <u>against Rodolfo</u> (based on defective condition of the cushion calendar and the lack of warnings regarding this condition, etc.) <u>and Krupp</u> (based on the defective condition of the emergency safety rope and lack of warnings, etc.).

Krupp removed the action to this United States District Court, which enjoys subject matter jurisdiction under the federal diversity statute, 28 U.S.C. § 1332. In the removal notice, Krupp advised that its proper legal name is Harburg-Freudenberger Maschinenbau GmBH (referred to from this point on as "HF"), that it is a Germany corporation located in Hamburg, Germany, and that it was *formerly* known as Krupp Elastomertechnik.[1]

Rodolfo consented to the removal and demanded a jury trial. The Court set final pretrial conference and trial dates (see Docs. 12 and 37). An initial Scheduling and Discovery Order was entered in July 2008 (Doc. 32). Answers were filed, and additional defense counsel entered.

➜     RODOLFO & HF'S THIRD-PARTY COMPLAINTS (AGAINST CONTINENTAL)

In February 2009, Defendant Rodolfo filed a third-party complaint against Continental (Doc. 58). Defendant HF also filed a third-party complaint

---

[1] The pleadings have interchanged (or used both) the names Krupp and HF. To minimize confusion going forward, the Court **DIRECTS counsel to eliminate reference to Krupp Elastomertechnik** in future pleadings, unless the former name is relevant to a legal issue. The Court will endeavor to do the same.

against Continental (Doc. 63).  The third-party complaints allege that Continental breached its duty to exercise reasonable care for its employee (Zelasko)'s safety.  The third-party complaints seek contribution from Continental, in the event Rodolfo or HF is found liable to Zelasko.  Continental answered the third-party complaints in April and May 2009 (Docs. 79, 82).

➜ RODOLFO AND HF'S CROSSCLAIMS (AGAINST EACH OTHER)

Rodolfo filed a crossclaim against Defendant HF (Doc. 74) in April 2009.  HF responded in kind (Doc. 75).

HF answered Rodolfo's crossclaim on May 8, 2009 (Doc. 83). Rodolfo answered Count I of HF's crossclaim (Doc. 90) and moved to dismiss Counts II and III of HF's crossclaim under Federal Rule of Civil Procedure 12(b)(6)(Doc. 88).  The Court now rules on Rodolfo's dismissal motion, which was fully briefed as of May 16, 2009.

B. Applicable Legal Standards

HF's crossclaim against Rodolfo (part of Doc. 75) is based on claims for contribution (Count I), implied indemnity (Count II), and breach of warranty (Count III).  Rodolfo answered Count I and seeks to dismiss Counts II and III under Rule 12(b)(6).

A 12(b)(6) motion challenges the sufficiency of the complaint (or crossclaim) to state a claim upon which relief can be granted.  ***Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, – F.3d –, 2009 WL**

**1794329 (7th Cir. June 25, 2009).** Dismissal is warranted under Rule 12(b)(6) if the complaint (or crossclaim) fails to set forth "enough facts to state a claim to relief that is plausible on its face." ***Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007);** ***EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).**

In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in plaintiff's favor. ***Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009); *Tricontinental Industries, Inc., Ltd. v. PriceWaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.)*, cert. denied*, 128 S. Ct. 357 (2007); *Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006).**

In ***Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)**, the Seventh Circuit emphasized that even though ***Bell Atlantic*** "retooled federal pleading standards" and "retired the oft-quoted *Conley* formulation," notice pleading is still all that is required.

"A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." ***Id.  Accord Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008)("surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the allegations "must be**

**enough to raise a right to relief above the speculative level").**

  C. Analysis

The gist of HF's crossclaim against Rodolfo is as follows (and the Court accepts as true these allegations for purposes of the pending motion): Rodolfo designed and manufactured the cushion calendar; HF purchased the cushion calendar from Rodolfo; Rodolfo was aware of the purpose for which the cushion calendar was being purchased; and Rodolfo ("through its agent, servants, and employees") was involved in the integration and installation of the cushion calendar into the production line at Continental Tire's plant. So, to the extent that the cushion calendar is shown to have been unreasonably dangerous or defective, any such condition or defect is attributable to Rodolfo, not to an act or omission of HF (see Doc. 75, p. 12).

  Rodolfo attacks Count II of HF's crossclaim – the implied indemnity count – on dual grounds. First, Rodolfo challenges Count II for failing to allege a pre-tort relationship between Rodolfo and HF that would support a claim of implied indemnity under Illinois law.[2] Second, Rodolfo asserts that Count II warrants dismissal, because Plaintiff Zelasko has *directly* sued both Rodolfo and HF, precluding any circumstance under which HF could recover from Rodolfo via indemnity.

---

[2] A federal court sitting in diversity applies state substantive law and federal procedural law. **See, e.g., Camp v. TNT Logistics Corp., 553 F.3d 502, 505 (7th Cir. 2009).**

The first argument has merit but does not take Rodolfo as far as it would like. Illinois law recognizes that a cause of action for implied indemnity must derive from a pre-tort relationship between the parties, not merely their involvement in a common undertaking. Examples of pre-tort relationships which support a duty to indemnify include lessor/lessee, employer/employee and master/servant. **See, e.g., Schulson v. D'Ancona v. Pflaum LLC, 821 N.E.2d 643, 647 (Ill. App. 2004); Kerschner v. Weiss & Co., 667 N.E.2d 1351, 1359 (Ill. App. 1996); Friedman, Alschuler & Sincere v. Arlington Structural Steel Co., 489 N.E.2d 308 (Ill. App. 1985).**

The Illinois Court of Appeals explained this point in detail in **Kerschner, 667 N.E.2d at 1359, quoting Frazer v. A.F. Munsterman, 527 N.E.2d 1248 (Ill. 1988)**:

> ... indemnification may arise from contract or from situations in which a promise to indemnify can be implied from the relationship among tortfeasors. "The fundamental premise ... is that the indemnitee, although without fault in fact, has been subjected to liability solely because of the legal relationship with the plaintiff or a nondelegable duty arising out of common or statutory law."

The United States Court of Appeals for the Seventh Circuit reiterated this in **BCS Ins. Co. v. Guy Carpenter & Co., Inc., 490 F.3d 597, 603 (7th Cir. 2007):**

> Under Illinois law, implied indemnity is available to a principal who, through no fault of his own, is held liable for its agent's negligent tort against a third party.

> *Jinwoong, Inc. v. Jinwoong, Inc.*, 310 F.3d 962, 965 (7th Cir. 2002). Furthermore, implied indemnity is applied in situations where "the indemnitee, although without fault in fact, has been subjected to liability solely because of the legal relationship with the plaintiff...."
>
> ... The ultimate purpose of indemnification is to "shift the entire responsibility from the party who has been compelled to pay the plaintiff's loss to another who actually was at fault."

Emphasizing that the "liability must be wholly derivative" and result *solely* out of the agent's actions, the Seventh Circuit held that to prevail on a claim for implied indemnity under Illinois law, a plaintiff must establish that there was a pre-tort relationship between the indemnitor and the indemnitee, and that the indemnitee was held derivatively labile for the acts of the indemnitor. **BCS, 490 F.3d at 603.**

Likewise, in **Schulson, 821 N.E.2d at 647** (which involved a third-party action for implied indemnity instead of a crossclaim), the Illinois Court of Appeals declared:

> Under implied indemnity, a promise to indemnify will be implied by law where a blameless party is derivatively liable to the plaintiff based on the party's relationship with the one who actually caused the plaintiff's injury...
>
> To state a cause of action for implied indemnity, a third-party plaintiff must allege: (1) a pre-tort relationship between the third-party plaintiff and the third-party defendant, and (2) a qualitative distinction between the conduct of the third-party plaintiff and the third-party defendant.

Clearly then, to state a claim for implied indemnity under Illinois law, the plaintiff (or third-party plaintiff or crossclaim plaintiff) must allege a pre-tort relationship between the indemnitor and the indemnitee. No such relationship is alleged in Count II of HF's crossclaim against Rodolfo. Therefore, the Court will dismiss Count II of the crossclaim without prejudice for failing to state a claim upon which relief can be granted.

Rodolfo asks the Court to dismiss Count II *with prejudice* by finding that "not only has HF failed to allege a pre-tort relationship, but HF cannot demonstrate the existence of a pre-tort relationship" (Doc. 89, p. 7). Rodolfo invites the Court to scrutinize the record and conclude that there is no "evidence" of any pre-tort relationship, justifying dismissal of that claim with prejudice (*id.*). The Court will not go so far.

On a Rule 12(b)(6) motion, the Court cannot properly look outside the pleadings to examine the record. The motion *sub judice* was not briefed as one seeking summary judgment, and the undersigned Judge declines to close that door to all implied indemnity claims via Rule 12(b)(6) motion now. The Court finds only that HF has not alleged a pre-tort relationship, as needed to support a claim of implied indemnity under Illinois law, which warrants dismissal of Count II *without* prejudice.

HF insists that it *has* alleged such a relationship. But these claims could be more plainly and clearly stated. Indeed, the parties' intermingling of

terms and names has produced unnecessary confusion in many of the pleadings herein. By way of example, Rodolfo calls its crossclaim a "cross-complaint" (Doc. 74, p. 1), and HF refers to its implied *indemnity* claim (Count II of the crossclaim) as an implied *warranty* claim (Doc. 92, p. 3). The latter is troubling, because HF apparently also *has* an implied warranty claim relating to the cushion calendar (part of Count III of the crossclaim). Nearly all of the parties continue to refer to "Krupp," despite the fact the removal notice 14 months ago clarified that Krupp is not the proper party Defendant.

Thus the undersigned Judge will afford HF an opportunity to amend its crossclaim. This will permit HF to allege any pre-tort relationship supporting the implied indemnity claim.

One point bears note regarding the necessary pre-tort relationship. HF maintains that Illinois law recognizes implied indemnity claims by "downstream" parties against "upstream" parties in the chain of distribution of an allegedly defective product (at least where the party seeking indemnity was not itself negligent). Specifically, HF argues that upstream implied indemnity claims remain viable under Illinois law, and the relative position of the parties in the chain of distribution *is* the requisite pre-tort relationship (Doc. 92, p. 9).

Rodolfo vehemently disputes this, citing **Yonan v. Verson Allsteel Press Co., 522 N.E.2d 184 (Ill. App. 1988)**(see reply brief, Doc. 93, pp. 2-3). HF counters that the facts of **Yonan** are utterly inapposite – it "did not

involve an 'upstream' implied indemnity claim at all" and "did not involve a claim against a component supplier whose allegedly defective component had been incorporated into the manufacturer's product *by the manufacturer*" (see sur-reply brief, Doc. 99, p. 2).

The undersigned Judge need not resolve this issue to dispose of the Rule 12(b)(6) motion before him. Without question, Illinois law still recognizes implied indemnity in certain circumstances. **See Burlington Northern and Santa Fe Ry. Co. v. ABC-NACO, 906 N.E.2d 83, 105 (Ill. App. 2009); Thatcher v. Commonwealth Edison Co., 527 N.E.2d 1261, 1263 (Ill. 1988)(although implied indemnity was not abolished by the Contribution Act, such a claim in a case involving a defective product "cannot be maintained where the one seeking indemnity was negligent or otherwise at fault in causing the loss"); Dixon v. Chicago and North Western Transportation Co., 601 N.E.2d 704 (Ill. 1992)(holding that implied indemnity is available in a defective products case if the party seeking indemnity was not negligent or otherwise at fault); American National Bank & Trust Co. v. Columbus-Cuneo-Cabrini Medical Center, 609 N.E.2d 285 (1992)(Contribution Act did not abolish actions for implied indemnity in vicarious liability situations).**

Implied indemnity is a viable Illinois cause of action under certain facts, and notice pleading still governs in federal court post-*Bell Atlantic.* The

Court at this juncture will not conclude that an implied indemnity claim against Rodolfo is utterly foreclosed.

Put another way, in this Rule 12(b)(6) context, the Court declines to find that "there is no scenario under which HF can recover under an implied indemnity theory" (Doc. 93, p. 3). The briefs discuss at length the various possible "outcomes at the trial of this matter" (Doc. 92, pp. 12-13), and Rodolfo stresses that it and HF are both named as direct Defendants by Zelasko. However, at this point (constrained to look no further than the pleadings), the Court finds merit in HF's analysis that there are *more than two* possible outcomes for HF at trial, and under at least one of these situations HF *might* be entitled to indemnity from Rodolfo. So the Court will not dismiss Count II of HF's crossclaim on this ground.

To recap – while not foreclosing the possibility of an implied indemnity claim by HF against Rodolfo, the Court will direct HF to amend the crossclaim to more plainly allege the pre-tort relationship upon which the implied indemnity claim is grounded.

Which leads to Rodolfo's contention that <u>Count III</u> of the crossclaim – containing the breach of warranty claim(s) – fails to pass muster under Rule 12(b)(6), in that "HF has not even offered a formulaic recitation of the elements of its breach of warranty cause of action" (Doc. 93, p. 5).

Count III refers in general terms to breaches of multiple warranties

(express and implied) and then offers one example – "including implied warranties of merchantability and fitness for a particular purpose" (Doc. 75, p. 16). This is quite vague even in the land of notice pleading. The Court will grant the motion to dismiss Count III but let HF to amend the crossclaim to more clearly or plainly state its warranty claim(s).

    D.    <u>Conclusion</u>

For all the above-stated reasons, the Court **GRANTS in part** and **DENIES in part** Rodolfo's May 11, 2009 motion to dismiss (Doc. 88).

The motion is *granted* in that the Court DISMISSES HF's crossclaim (part of Doc. 75) in its entirety. The motion is *denied* in that dismissal shall be <u>without</u> prejudice, and the Court will permit HF an opportunity to amend the crossclaim (to more clearly plead the existing claims, not to add new claims).

HF should file its Amended Crossclaim as a new stand-alone document[3] using Arabic numbers (1, 2, 3, 4, etc.) rather than Roman numerals (I, II, III, IV, etc.) to designate individual counts. HF may find it cleaner to separate into different counts claims for breach of express warranty and claims

---

[3] HF's crossclaim against Rodolfo was appended to HF's answer to Zelasko's complaint. Unfortunately, HF docketed the latter portion of the pleading as an answer to Rodolfo's crossclaim, rather than an answer to the Zelasko's complaint. That docket entry (at Doc. 75) was corrected by the Clerk's Office on 7/21/09 via directive from the undersigned Judge's chambers. The parties are advised that previously-printed versions of the docket sheet will not match docket sheets printed after 7/21/09.

for breach of implied warranty.  HF's deadline for filing the amended crossclaim is  August 10, 2009.

Finally, because the docket sheet indicates that only one party was provided a notice of right to consent to magistrate judge, the undersigned Judge **DIRECTS** the Clerk of Court to provide a copy of the consent form by mail to counsel for all four parties (Zelasko, Rodolfo, HF, and Continental).  The parties may also find the form on the Court's website at www.ilsd.uscourts.gov.  The Court seeks only to provide the form equally to *all* parties herein (not to suggest that any adverse substantive consequence will result from the withholding of consent).

IT IS SO ORDERED.

DATED this 23rd day of July 2009.

s/ Michael J. Reagan  
MICHAEL J. REAGAN  
United States District Judge